UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Jorge A. Rodriquez, Jr.,
    Plaintiff,

v.                        09-CV-1118

Robert Migliorino, et al.,
    Defendants.

Memorandum Opinion and Order

    Before the court is Defendant Damewood's unopposed summary judgment motion [107]. Plaintiff filed his Complaint on March 31, 2009, alleging that Defendants were deliberately indifferent to his serious medical needs at Hill Correctional Center beginning in June 2008. Damewood is the only remaining defendant.

Standard

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

    Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924

F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. *Keri v. Barod of Trustees of Purdue University*, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Undisputed Material Facts[1]

1. Plaintiff is an inmate previously incarcerated at Hill Correctional Center (Doc. 1), but is now incarcerated at Cook County Jail. (Doc. 101).
2. Plaintiff filed his Complaint on March 31, 2009, complaining of deliberate indifference to medical needs at Hill Correctional Center from June 2008 to present.
3. Plaintiff's claims of deliberate indifference to serious medical needs related to injuries sustained to his right shoulder on October 28, 2007, while Plaintiff was being arrested in Cook County. (Exhibit A, Plaintiff's Dep at 13, 24).
4. Plaintiff spent about thirty days at Cook County. (Plaintiff's Dep at 15). Plaintiff was then taken to Stateville Correctional Center. (Plaintiff's Dep at 16).
5. Plaintiff stayed at Stateville Correctional Center for eleven months, and was then transferred to Hill Correctional Center. (Plaintiff's Dep at 17).
6. Upon arriving at Hill Correctional Center, Plaintiff went through a medical evaluation with a nurse. (Plaintiff's Dep at 18).
7. The nurse told Plaintiff he would see a doctor, and Plaintiff did later see a doctor that evaluated his shoulder and wrist. (Plaintiff's Dep at 19, 20).
8. The doctor ordered an X-ray. (Plaintiff's Dep at 21). Plaintiff then went back to the doctor, and the doctor prescribed Motrin. (Plaintiff's Dep at 23).
9. Plaintiff was then sent to an outside physician, who looked at Plaintiff's shoulder and prescribed a shot. (Plaintiff's Dep at 26).
10. According to Plaintiff's medical records, he was seen on June 24, 2008 regarding his right shoulder. (Exhibit B).
11. That day, Plaintiff was put in for an X-ray, and to be seen by a doctor after the X ray. (Exhibit B).
12. On July 3, 2008, Plaintiff had an X ray taken of his right shoulder. (Exhibit B).
13. On July 18, 2008, Plaintiff was seen by a nurse regarding his right shoulder. (Exhibit B).
14. Plaintiff was seen by health care staff on July 28, 2008. (Exhibit B).
15. Plaintiff was seen again on July 30, 2008 regarding his right shoulder. (Exhibit B).
16. Plaintiff had an X ray taken on August 11, 2008. (Exhibit B).
17. On August 15, 2008, Plaintiff was seen by a nurse regarding his right shoulder and given 800mg Motrin. (Exhibit B).
18. On August 18, 2008, Plaintiff was seen in the health care unit. (Exhibit B).
19. On August 20, 2008, Plaintiff was seen in the health care unit regarding his right shoulder. (Exhibit B).
20. On August 22, 2008, Plaintiff was seen by a doctor who scheduled an MRI. (Exhibit B).

---

[1]Exhibits can be found attached to the defendant's memorandum of law [108].

21. Plaintiff's medical records contain entries dated August 30, 2008. (Exhibit B).
22. Plaintiff saw a doctor on September 2, 2008, regarding his right shoulder pain. (Exhibit B).
23. Plaintiff's medical records contain entries dated September 4, 2008 and September 5, 2008. (Exhibit B).
24. Plaintiff saw a doctor on September 13, 2008 regarding his right shoulder. (Exhibit B).
25. On September 17, 2008, Plaintiff was taken on a medical furlough. (Exhibit B).
26. On October 9, 2008, Plaintiff was taken on another medical furlough. (Exhibit B).
27. On October 16, 2008, Plaintiff had an X ray taken of his chest. (Exhibit B).
28. On October 18, 2008, Plaintiff saw a doctor regarding his right shoulder. (Exhibit B).
29. Plaintiff claims Damewood denied Plaintiff medical attention. (Exhibit A, Plaintiff's Dep at 68).
30. Specifically, Plaintiff claims that on October 14, 2008, Plaintiff asked Damewood if he could go to health care because of his shoulder. (Plaintiff's Dep at 68, 69).
31. Plaintiff claims Damewood gave Plaintiff a pen and paper and told him to put his name and number down, and that Plaintiff would be called. (Plaintiff's Dep at 69).
32. Plaintiff did put his name on the list, and saw a nurse two days later on October 16, 2008. (Plaintiff's Dep at 69, 70).
33. Plaintiff also claims that on August 14, 2008, he complained to Damewood. (Plaintiff's Dep at 74, 75).
34. Plaintiff was seen in health care the next day on August 15, 2008. (Plaintiff's Dep at 75).
35. Plaintiff acknowledges Damewood sent him to health care on August 15, 2008. (Plaintiff's Dep at 75).
36. Plaintiff submitted a grievance on the August 14, 2008 incident, (Doc. 74, Exhibit C), but did not grieve the alleged October 16, 2008 incident. (See Doc. 74).
37. The counselor's response to Plaintiff's August 14, 2008 grievance states "per officer Damewood, this incident occurred on 8/14/08. The officer says he asked the IM how long the IM had had this pain and the officer said the IM said two days. Since the IM did not state it was an emergency, he was told to sign up for nurse screening." (Doc. 74-1 at 10).
38. Damewood is not a licensed physician and does not provide medical treatment to inmates. (Exhibit C).
39. Rather, he relies on the facility medical professionals to adequately diagnose and treat the medical problems of the offenders. (Exhibit C).
40. If an inmate complained to Damewood of a non emergency medical need, he would have them sign up for sick call, and they would have been scheduled to see someone in the health care unit to have their medical need addressed. (Exhibit C).

Analysis

Prison officials violate the Eighth Amendment proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Claims for deliberate indifference to a serious medical need contain both an objective and a subjective component. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir, 1999). Under the objective component, a plaintiff must demonstrate the deprivation suffered is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need is one that is "'life threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). The subjective component requires a plaintiff to demonstrate officials acted with a "'sufficiently culpable state of mind.'" Id. (*quoting Wilsons v. Seiter*, 501 U.S. 294, 297 (1991)). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997) (*citing Farmer v. Brennan*, 511 U.S. 825, 840-42 (1994)).

   Plaintiff's claims of deliberate indifference to serious medical needs related to injuries sustained to his right shoulder on October 28, 2007, while Plaintiff was being arrested in Cook County. He complained to Defendant Damewood on August 14, 2008 and on October 14, 2008. On August 15, 2008, Plaintiff was seen by a nurse regarding his right shoulder and given 800mg Motrin. Plaintiff acknowledges Damewood sent him to health care on August 15, 2008. In the context of medical treatment, "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . ." *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005). Prison administrators must rely on those with medical expertise to assess the needs of inmates and to prescribe treatment. *McEahern v. Civiletti*, 502 F. Supp. 531, 534 (N.D. Ill. 1980); *see also Allen v. City of Rockford*, 349 F. 3ed 1015, 1020 (7th Cir. 2003. (Government employees are entitled to rely on a physician's determination of the best way to treat a patient). Accordingly, a non-medical prison official is entitled to summary judgment on a claim of deliberate indifference when he or she reasonably responds to an inmate's complaint of grievance by ensuring the inmate has been evaluated by a physician and received medical care for the complained of condition. *Johnson v. Doughty*, 433 F.3d 1001, 1010-1012 (7th Cir. 2006). Defendant Damewood is not a licensed physician and does not provide medical treatment to inmates. Rather, he relies on the facility medical professionals to adequately diagnose and treat the medical problems of the inmates. Damewood did not ignore Plaintiff's complaints on August 14, 2008, but rather had him sign up for nurse screening. Plaintiff was seen by a nurse and given a pain killer on the very next day, August 15, 2008. Damewood did not act with deliberate indifference; to the contrary, Damewood's actions of signing the Plaintiff up for nurse screening resulted in Plaintiff being seen and medically treated by medical staff the very next day.

   Defendant advises the court that it only became clear after Plaintiff was deposed that Plaintiff was complaining of an October 16, 2008 incident (not grieved) as well as an August 14, 2008 incident (grieved). Therefore, Defendants did not address this issue in Defendants' previous motion for summary judgment, but Damewood addresses it now. Based on the facts before this court, the court finds that Plaintiff did not exhaust his administrative remedies as to the alleged October 14, 2008 incident. Pursuant to the Prison Litigation Reform Act, all prison inmates bringing an action under 42 U.S.C. §1983, with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with the lawsuit. (42 U.S.C. §1997e(a)). Plaintiff submitted a grievance on the August 14, 2008 incident, but did not grieve the alleged October 14, 2008 incident. Because the facts show Plaintiff did not exhaust his administrative remedies as to the alleged October 14, 2008 incident, Damewood is entitled to summary judgment on this claim.

4

Furthermore, even if Plaintiff had exhausted his administrative remedies on the October 14, 2008 incident, Damewood would still be entitled to summary judgment. Plaintiff claims Damewood denied him medical attention on October 14, 2008. He claims he asked Damewood if he could go to Health Care because of his shoulder. He claims Damewood told him to put his name a number on a pad, and that he would be called. Plaintiff did put his name on the list and saw a doctor two days later, on October 16, 2008. Damewood did not act with deliberate indifference; rather he had Plaintiff sign up to see the health care staff, and Plaintiff was in fact seen by health care staff within two days.

It is ordered:

1. Based on the foregoing, Defendant Damewood's motion for summary judgment [107] is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 21st day of September 2011.

/s/ James E. Shadid
_____
James E. Shadid
United States District Judge